WILSON, The FREDERICK M. See Case No. 5,078.

## Case No. 17,850.

### WILSON PACKING CO. et al. v. CLAPP.

[8 Biss. 154; 3 Ban. & A. 243; 13 O. G. 368; Fent. Pat. 35.] [1]

Circuit Court, N. D. Illinois. Feb., 1878.

PATENT FOR INVENTION—CANNED GOODS—INJUNCTION AGAINST INFRINGEMENT—PROOF.

1. The main and principal feature of the art of canning foods of various kinds, being old and well known, a patent for any particular article of canned goods "as a new article of commerce" must be clearly sustained by proof, in order to sustain an injunction against other manufacturers of similar goods.

2. An injunction ought not to issue to restrain the infringement of a patent when it does not appear from the record that the defendant has ever made or sold any of the goods in the district.

3. The sending of circulars to parties engaged in the trade, notifying them of a preliminary injunction, is improper.

4. Whether the pyramidal form of can is patentable, quære.

In equity. On the 5th of January last, a motion was made by complainants, based on the bill and affidavits previously filed, for an injunction, restraining the defendant [William B. Clapp] from putting up, manufacturing, or selling canned corned beef, in such manner as to infringe upon certain patents belonging to complainants and particularly described in the bill. The bill and affidavits were not read, but both parties being represented by counsel, it was conceded that a case was made for an injunction and an injunction order was accordingly entered as prayed, with the understanding that defendant might move for the vacation of said order, as soon as counsel could prepare their affidavits. The affidavits were soon after filed and the motion submitted upon the allegations and proofs of the respective parties and the briefs and arguments of counsel.

Munday & Evarts, West & Bond, John N. Jewett. and T. A. Goodwin, for complainants.

Eldridge & Tourtelotte, Noble & Orrick, and Coburn & Thacher, for defendant.

[1] [Reported by Josiah H. Bissell, Esq., and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here compiled and reprinted by permission.

BLODGETT, District Judge. The bill charges that complainants own three patents relating to the subject matter of packing and preserving meats in hermetically sealed cans or packages. The first of said patents was issued [July 12] 1864 to W. C. Marshall [No. 43,-516; reissued May 25, 1875, Nos. 6,451 and 6,452]; the second was issued in 1874 to W. J. Wilson [No. 149,276; reissued April 6, 1875, No. 6,370]; and the third was issued in 1875 to J. A. Wilson [No. 161,848; reissued October 23, 1877, No. 7,923]. All these patents have been re-issued, and two of them, (the Marshall and one of the Wilson) within the past year. The claims are, briefly, for canned meats put up in the manner described "as a new article of commerce"; and for some special improvements in the cans or packages—the principal of which is the shape of the can—the Wilson can being made in the form of a section of a pyramid with rounded corners; whereby the solidly packed contents of the can are turned out in a firm mass or cake by cutting off the bottom or lower end of the can, so that the beef can be readily cut in slices for the table.

The process of preserving fruits, vegetables and meats in hermetically sealed cans or packages, is not new or original to these patentees. In 1810, M. Appert published in France the details of the process then lately discovered by him for preserving fruits, vegetables and meats by parboiling or cooking them so as to expel the fixed air, and then sealing them up in airtight cans, bottles or jars. This discovery was considered of so much importance to the world that the French government paid M. Appert 10,-000 francs for making it public. And the art has since then been extensively practiced both in this country and Europe. The Appert process was afterwards improved by Durand, Dankin, Gamble and others in England, and by Winslow and others in this country, so that canned foods of various kinds had become an article of commerce long before the date of either of complainants' patents. 9 Enc. Brit. 767, tit. "Food" (published in 1855); 13 New Am. Cyc. (published in 1863) tit. "Preservation of Food," p. 569. The main and principal features of the art being so old, it will be, at least, a nice question to determine how far a patent for each particular article of canned foods "as a new article of commerce" can be sustained, as a new invention. I do not intend to be understood as now saying that such patents are invalid for want of novelty. I only intend to say that I think courts should not be hasty or inconsiderate in granting injunctions at the instance of the holders of such patents against other manufacturers of similar goods. And had the whole facts been brought to my notice, as they are now, at the time the original motion was made, I feel sure I should not have granted the injunction.

So far as the complainants' patents cover the cans they use, no special proof is put into the record. To the eye the cans used by complainants and those said to have been sold by defendant, appear to be, externally, substantially alike. But I doubt whether the pyramidal shape which is the distinctive feature of complainants' can, is a patentable device. It would seem to be a shape so often adopted in other packages and molds when it is desirable to turn the contents out whole or solid, as to be no longer novel. Still, it may be patentable. I only intimate a doubt, and say that I think a court should be cautious in regard to such a patent.

Aside from the objections that apply directly to the patents it does not appear from the record that this defendant has ever made or sold any goods in the similitude of complainants' goods in this district. He is the agent of a St. Louis packing company for the sale of their goods in New York City, and does no business and has no place of business in this district. A preliminary injunction ought not, therefore, to issue against him in this district; because such a process cannot run beyond the territorial limits of the district; certainly not in an ordinary case such as is made in this record. A case possibly might be made upon extraordinary facts which would justify such an issue, but such case is not made here.

It also appears that immediately on the entry of the order in this case, circulars and notices were sent outside this district to parties engaged in the trade, dealing with the complainants' competitors, intended to alarm such persons and injure the trade of competing manufacturers. This strikes me as hardly justifiable under the circumstances. I think complainants, if they have faith in their patents, should make their attack directly on such competitors as they claim are infringing their patents, and contest the question squarely with them. This class of goods has now, according to the proofs, gone into very general use as an article of food, and can be found for sale in most family groceries; and it seems to me not the right course to attack these dealers, and annoy and intimidate them by threats of patent suits. The course taken by complainants suggests the charge that they intended to obtain many of the advantages of an injunction by harassing and interfering with the business of a rival without taking the risk of a direct suit with that rival, when they would be responsible for the consequences of their act. Such may not have been their purpose but it is liable to such construction.

The injunction is dissolved.

This case was subsequently brought to final hearing before DRUMMOND and BLODGETT, District Judges, and the patents held void for want of novelty, and the bill dismissed on a certificate of division. See Wilson Packing Co. v. Clapp [Case No. 17,851].

[For other cases involving these patents, see Wilson Packing Co. v. Clapp, Case No. 17,851, and Wilson Packing Co. v. Hunter, 9 Fed. 547.]